**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

DR. SHAILESH GUPTA,                                           Case No.:_____

       Petitioner,

v.

UNITED STATES DEPARTMENT OF JUSTICE,
by and through its False Claims Law Investigator
Nelson Wagner, Trial Attorney,

       Respondent.

_____/

**DR. SHAILESH GUPTA'S PETITION TO**
**SET ASIDE OR, IN THE ALTERNATIVE, MODIFY**
**<u>CIVIL INVESTIGATIVE DEMAND NO. 25-1079</u>**

Petitioner Dr. Shailesh Gupta, by and through undersigned counsel and pursuant to 31 U.S.C. § 3733(j)(2)(A), respectfully submits this Petition to Set Aside or, in the Alternative, Modify the Civil Investigative Demand No. 25-1079 attached hereto as Exhibit "A" (the "CID") issued on or about November 10, 2025, by the United Stated Department of Justice (the "DOJ") by and through its designated False Claims Law Investigator Nelson Wagner, Trial Attorney, on three grounds:

***First,*** the DOJ is barred from using a CID after it has made an election decision; here, the DOJ has already elected to *de facto* intervene as to several settling co-defendants and has decided it intends to intervene as to Dr. Gupta's practice. Section 3733(a)(1) specifically limits the DOJ's ability to issue CIDs to the period ***before*** "making an election under section 3730(b)."

***Second,*** even if the DOJ were permitted to issue the CID, it is duplicative of prior subpoenas and facially overbroad in scope, both as to time-period and subject matter, therefore warranting issuance of an order quashing or modifying the CID.

1

***Third***, in the Middle District of Florida, where the underlying False Claims Act (FCA) case is pending, FCA cases have been declared unconstitutional as violations of the Appointments Clause of the United States Constitution. *See United States ex rel. Zafirov v. Florida Medical Associates, LLC*, 751 F.Supp.3d 1293 (M.D. Fla. 2024) (appeal pending before the Eleventh Circuit). The Eleventh Circuit held oral argument on the government's appeal of the *Zafirov* opinion on Friday, December 12, 2025.[1]

## INTRODUCTION

Petitioner Dr. Shailesh Gupta is a board-certified ophthalmologist and fellowship trained vitreo-retinal specialist. He has served as a full-time faculty member at the University of Florida and Fellowship Director for the Vitreo-Retinal Fellowship Programs at the University. He frequently publishes in peer-reviewed journals in his areas of specialty and subspeciality and has been recognized by courts as an expert in his field. He is the founder and owner of Specialty Retina Center, LLC ("SRC"), a multi-office retinal care and surgery clinic located in Broward and Palm Beach Counties, Florida, which employs a large number of physicians, technicians, and administrative and billing personnel.

In 2021, the DOJ began investigating allegations raised in a sealed FCA lawsuit filed in the United States District Court for the Middle District of Florida related to a company called HealthxMD, LLC (hereinafter the "Healthx FCA Case"). The Relator in the Healthx FCA Case is a former Healthx employee. The lawsuit named thirty-nine (39) separate defendants, including Healthx and its principals and a large number of ophthalmology practices around the country with which Healthx did business. The allegations involve a treatment Healthx provided to patients of the ophthalmology practices called Trans-Cranial Doppler Ultrasound, or "TCDs." Dr. Gupta's

---

[1] *See* ca11.uscourts.gov/system/files_force/oral_argument_recordings/24-13581_12122025.mp3.

ophthalmology practice SRC, which had a contract with Healthx related to TCDs from 2018 through around March of 2021, was named as one of the 39 defendants. Dr. Gupta was not named as an individual defendant in the Healthx FCA Case.

Beginning as early as 2022, the DOJ began issuing administrative subpoenas and other demands and requests for information to various defendants in the Healthx FCA Case, including SRC. SRC produced substantial documentation and patient charts in response to a subpoena. The DOJ also engaged in settlement discussions and ultimately reached settlement agreements with multiple defendants. After counsel for SRC informed the DOJ it would not accept the DOJ's settlement demands, the DOJ promptly issued the CID at issue here to Dr. Gupta individually, despite having already received substantial documentation in response to the previous subpoenas issued to SRC, Healthx, and the other ophthalmology practices, despite having already elected to *de facto* intervene for settlement against other co-defendants in the Healthx FCA Case, and despite advising SRC's counsel that the DOJ had decided it intended to intervene as to SRC as well.

The CID is untimely, duplicative, and overbroad and was issued only after a refusal to settle. The CID's purpose appears to be either retaliation for refusal to settle or as a tool to force a settlement. Section 3733 of the FCA does not permit the DOJ to use CIDs for such purposes and specifically prohibits CIDs after elections or decisions to intervene. The CID should be set aside.

## PROCEDURAL HISTORY

1. The Healthx FCA Case was filed under seal in 2021. It alleged, in part, that SRC's relationship with Healthx ended in or about March of 2021.

2. In 2022, the DOJ began issuing administrative subpoenas to defendants in the Healthx FCA Case under the authority of 18 U.S.C. § 3486. The administrative subpoenas were

very broad in scope and time, essentially seeking production of all materials related to Healthx and TCDs from 2016 forward.

3.      On August 17, 2022, the DOJ issued just such an administrative subpoena to SRC in connection with the Healthx FCA Case investigation.

4.      On October 21, 2022, SRC produced approximately 800 pages of documents as an initial rolling response to the administrative subpoena. On April 14, 2023, SRC produced an additional approximately 14,982 pages of patient records for 80 patients in further response to the administrative subpoena. On April 21, 2023, SRC produced another nearly 1000 pages of documents in further response to the administrative subpoena, for a total production of **16,782** pages of documents. The DOJ has never moved to compel additional materials or to otherwise enforce the administrative subpoena against SRC.

5.      In responding to the subpoena, SRC retained an outside e-discovery vendor at significant cost and incurred substantial additional attorney and legal professional costs to review potentially responsive materials.

6.      The DOJ has publicly announced settlements with several defendants in the Healthx FCA Case, including a November 2024 settlement with Brandon Eye Associates, P.A. ("Brandon Eye") and a May 2025 settlement with Pinellas Eye Care, P.A. d/b/a/ Gulfcoast Eye Care. ("Gulfcoast Eye").

7.      The Brandon Eye settlement agreement provided for the Relator to receive a nineteen (19) percent share of the settlement proceeds. Under 31 U.S.C. § 3730(d)(1), if the DOJ elects to intervene the Relator shall "receive at least 15 percent but not more than 25 percent" of the settlement proceeds. However, if the DOJ elects not to intervene, the Relator's share of the settlement "shall be not less than 25 percent." 31 U.S.C. § 3730(d)(2). The Relator's 19 percent

share shows that the DOJ *de facto* intervened for purposes of the Brandon Eye settlement. While DOJ's counsel has represented to undersigned counsel that no formal intervention election appears on the sealed docket in the Healthx FCA Case, the Relator's 19% share is only consistent with a *de facto* intervention.

8.      Both the Brandon Eye and Gulfcoast Eye settlements were settlements of the claims raised in the Healthx FCA Case, both related to the provision of TCD services to the ophthalmology practices' patients, and both were handled by DOJ Trial Attorney Nelson Wagner. *See*      https://www.justice.gov/archives/opa/pr/florida-ophthalmology-practice-agrees-pay-13m-resolve-allegations-fraudulent-claims-0      and      https://www.justice.gov/usao-mdfl/pr/florida-ophthalmology-practice-agrees-pay-615000-resolve-allegations-fraudulent-claims. The DOJ thus *de facto* intervened for settlement in the same "false claim law investigation" with the same "false claim law investigator" as the CID to Dr. Gupta.

9.      On November 10, 2025, the DOJ served Dr. Gupta with the CID at issue in this Petition. *See* Ex. "A." The CID requested, *inter alia*, "[a]ll documents pertaining to Trans-Cranial Doppler Ultrasound (TCD) services" from January 1, 2016, to the present, and scheduled an oral deposition of Dr. Gupta for December 17, 2025. *Id.* at p. 6. The CID includes extremely broad and lengthy "Definitions and Instructions" and "Specifications for the Production of ESI" that further expand the scope and burden of a response. *Id.* at pp. 3-5, 7-20. The "False Claims Law Investigator" identified in the CID is Nelson Wagner, Trial Attorney with the DOJ. The scope of the materials requested in the CID overlaps entirely with the scope of the materials requested in the prior administrative subpoena to SRC. Dr. Gupta would not possess any additional materials beyond what SRC possesses related to TCDs and Healthx.

10.     On November 13, 2025, undersigned counsel made a written request to the DOJ that "the false claims law investigator identified in the above-referenced CID, agree and prescribe in writing (pursuant to 31 U.S.C. §§ 3733(a)(2)(B)(ii)-(iii) and (j)(2)(A)(ii)) that Dr. Gupta may respond and/or petition to modify or quash the CID on or before January 10, 2026…." On November 14, 2025, Nelson Wagner, the False Claims Law Investigator, confirmed this extension in writing.

11.     On November 17, 2025, Nelson Wagner and the DOJ again confirmed that Dr. Gupta's petition to quash or modify the CID would be timely if filed before January 10, 2026.

12.     On November 17, 2025, undersigned counsel met and conferred with the DOJ regarding the scope of the CID and, while the parties were able to reach some limited agreements on scope (including that Dr. Gupta need not produce patient charts beyond the 80 charts previously produced), the DOJ would not agree to otherwise meaningfully limit the duplicative and overbroad scope of the CID or accommodate Dr. Gupta's request for the DOJ to share in the high costs of production.

13.     On November 17, 2025, the DOJ reiterated that it intended to intervene in the Healthx FCA Case against SRC, though the DOJ's counsel has represented that no formal "paperwork" for such an intervention has yet been approved by the DOJ.

14.     On December 15, 2025, undersigned counsel again conferred with the DOJ in an effort to avoid this Petition, but the DOJ refused to withdraw the CID or deem the prior production of documents by SRC sufficient to comply with the CID. (The parties continue to confer as of the filing of this Petition).

15.     Dr. Gupta resides in the Southern District of Florida. His CID deposition is currently scheduled to take place on December 17, 2025, in Miami, Florida, and the documents

potentially responsive to the CID are all located at the SRC locations in Broward County, Florida. Pursuant to 31 U.S.C. § 3733(j)(2), this Petition is properly filed in the Southern District of Florida.

<u>DISCUSSION</u>

**I.      The DOJ's *De Facto* Election and Decision to Intervene Bars the CID**

**A. Background of the FCA**

The FCA was enacted in 1863 to "stop[] the massive frauds perpetrated by large contractors during the Civil War." *U.S. ex rel. Hunt v. Conchise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018) (quoting *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016)). Congress adopted the FCA in response to contractors who overbilled and defrauded the United States in connection to purchases necessary for war. *Id*. Today, the FCA can result in drastic civil liability in a wide range of industries, especially health care, subjecting violators to treble damages and other penalties. *Id*. The severity of the FCA's potential penalties give DOJ lawyers an outsized negotiating tool to compel settlements, even of claims with little to no legal or factual merit.

Section 3730 of the FCA sets forth multiple enforcement mechanisms. For instance, the Attorney General may bring suit to enforce the FCA. § 3730(a). Also, a private plaintiff, called a relator, may bring a *qui tam* action on behalf of the United States, triggering the government's obligation to assess the relator's claims and determine whether to intervene and take control of the litigation. § 3730(b). Generally, the DOJ seeks and obtains an extension (and often multiple extensions) of the period when an FCA case remains under seal so it can investigate and consider whether to elect or decide to intervene. *See* § 3730(b)(3) & (4).

**B. The Purpose of, and Authority to, Issue CIDs Under § 3733**

Prior to 1986, when Congress adopted section 3733, the government complained of having "inadequate investigative tools" with respect to potential FCA violations. S. Rep. No. 99-345, at 6

(1986). The government argued that its civil attorneys had "no authority to compel production of documents or depositions prior to filing suit" and thus some cases were "not filed because information [was] missing—information that might have turned up through pre-suit investigation if the tools were available." *Id*.

Congress addressed that concern by adopting section 3733. It empowers the Attorney General (and now the Attorney General's designee), to issue a CID requesting documents, interrogatories, and/or depositions:

> Whenever the Attorney General, or a designee (for purposes of this  section), has reason to believe that any person may be in possession,  custody, or control of any documentary material or information relevant to a false claims law investigation, the Attorney General, or a designee, may, ***before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b)***, issue in writing and cause to be served upon such person, a civil investigative demand requiring such person—
>
> (A) to produce such documentary material for inspection and copying,
>
> (B) to answer in writing written interrogatories with respect to such documentary material or information,
>
> (C) to give oral testimony concerning such documentary material or information, or
>
> (D) to furnish any combination of such material, answers, or testimony.

31 U.S.C. § 3733(a)(1) [emphasis supplied].

The ability to utilize CIDs provides the DOJ "with a means to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested, whether grounds exist for initiating a false claim suit." *U.S. v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995). As one court has observed, "the civil investigative demand is a prefiling investigative tool that Congress created to aid the Government in ***deciding*** whether to file suit in the first place." *U.S. v. Kernan Hosp.*, 2012 WL 5879133, at *3 (D. Md. Nov. 20, 2012) [emphasis supplied].

The DOJ's authority to issue CIDs is thus proscribed and limited. As Congress set forth expressly in section 3733, this authority exists only "before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b) . . . ." § 3733(a)(1). Once the DOJ elects to intervene, the purpose of the CID has been met and the DOJ's authority to issue CIDs in that false claims law investigation ends.

A decision to intervene, for purposes of the bar, is equivalent to a formal election, particularly when the DOJ has decided to intervene following a lengthy investigation and multiple extensions of the seal. For example, in *United States ex rel. Costa v. Baker & Taylor*, 955 F. Supp. 1188 (N.D. Cal. 1997), the court denied the government's motion for a fourth extension to the sealing period in a *qui tam* case and compelled the government to make an election as to intervention. The court remarked that "[i]n this case, the government appears to be fully engaged in its discovery, without giving the defendants the opportunity even to answer the complaint." *Id.* at 1190. The court found the government's arguments as to the ramifications of lifting the seal on settlement discussions and related criminal case unpersuasive, pointing out that the government already had time far in excess of the 60-day sealing period envisioned by Congress to make its intervention decision.

The opinion of the court in *U.S. ex rel. Martin v. Life Care Center of America, Inc.*, 912 F. Supp. 2d 618 (E.D. Tenn. 2012), was likewise critical of unduly extending the sealing period for unserved qui tam actions in order to permit investigation under the guise of determining whether to pursue claims. The court stated "[i]t defies logic to suggest that the government would give defendant a 'lengthy and detailed' report of an investigation and attempt to obtain a settlement based on claims that it did not intend to pursue." *Id.* at 624.

The Fourth Circuit Court of Appeals has also expressed concern with the frequency and lack of scrutiny with which district courts extend sealing periods in qui tam cases, emphasizing that courts must "weigh carefully any such extension beyond the 60-day [sealing] period." *ACLU v. Holder*, 673 F.3d 245, 257 (4th Cir. 2011). The Fourth Circuit has also upheld the quashing of a grand jury subpoena where the district court found the "government sought the [grand jury] subpoena solely for the purpose of obtaining discovery for the civil [qui tam] proceeding." *In re Grand Jury Subpoena*, 175 F.3d 332, 340 (4th Cir. 1999).

Here, the DOJ has already obtained multiple lengthy extensions of the seal to investigate this matter. The *de factor* interventions for settlement and the announced intention to intervene as to non-settling defendants shows that the DOJ is not using the CID to "make its intervention decision" but rather as a tool for early, unilateral discovery for the inevitable FCA case.

### C. Principles of Statutory Interpretation

In *Hunt*, the Eleventh Circuit recently analyzed the FCA and in doing so set forth how the principles of statutory interpretation apply to the FCA. Courts "must begin 'where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." *Hunt*, 887 F.3d at 1088 (quoting *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (*en banc*)). In considering the text, the Court should bear in mind that "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *Id*. (quoting *Koons Buick Pontiac GMC, Inc. v. Nigh*, 532 U.S. 50, 60 (2004)). Courts must "look to 'the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Id*. at 1088-89 (quoting *Dolan v. U.S. Postal Serv*., 546 U.S. 481, 486 (2006)).

In making this inquiry, courts consider the canons of statutory construction. *Id*. at 1089. For instance, courts read a statute "using the normal meanings of its words...." *Horton Homes, Inc.*

*v. U.S.*, 357 F.3d 1209, 1211 (11th Cir. 2004) (quoting *Consolidated Bank, N.A. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1463 (11th Cir. 1997)). Also, "when the statutory language remains ambiguous after considering 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole,'" legislative history "may prove helpful" to resolve the ambiguity. *Hunt*, 887 F.3d at 1089 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

### D. Applying the Post-Intervention Limitation

The post-intervention limitation set forth in section 3733(a)(1) is not ambiguous. To the contrary, the language is clear. By the statute's plain text, the government may use CIDs to obtain, from any person, "documentary material or information relevant to a false claims law investigation." § 3733(a)(1). The same sentence further limits such use to a particular period of time: "before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b)...." § 3733(a)(1). Reading this language together, the government may use CIDs to conduct a "false claims law investigation," but the government may no longer do so after that investigation results in either the institution of a civil proceeding under section 3730(a) or an election or decision under section 3730(b). After either event occurs, the government may not utilize CIDs to continue its "false claims law investigation." *See Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 623 (D.C. Cir. 1989) ("[I]t is evident to anyone reading the statute . . . that the Attorney General may not employ the power granted by this section after he has commenced a false claims action.").

Here, once the Relator filed the Healthx FCA Case, section 3730(b) obligated the DOJ to investigate whether there were false claims involving Healthx and the TCDs performed for the patients of the defendant ophthalmology practices. The DOJ did so and utilized subpoenas and

document requests in the process, exactly as section 3733(a)(1) contemplates. The DOJ then *de facto* elected to intervene for settlement of some co-defendants, including Brandon Eye, and reached a decision that it intended to intervene as to SRC. At that point, section 3733(a)(1)'s postintervention limitation prohibited the DOJ from using CIDs to continue its investigation.

There can be no dispute that the DOJ's post-intervention CID at issue in this Petition is a continuation of the same "false claim law investigation" that the DOJ conducted prior to intervention. The *de facto* interventions for settlement were against co-defendants in the same Healthx FCA Case, the settlements specifically related to conduct involving Healthx and TCDs, and the investigations and settlements were handled by the same U.S. Attorney's Office (the Middle District of Florida) and the same false clams law investigator (DOJ Trial Attorney Nelson Wagner) that issued the CID here.

Thus, under the plain language of Section 3733, the DOJ's use of CIDs is limited; it cannot issue a CID to Dr. Gupta to investigate the same matter as to which it has already elected to *de facto* intervene and decided it intends to intervene. Notably, this Congressional limitation on the use of CIDs is entirely reasonable. Once the government pursues litigation, whether under section 3730(a) or 3730(b), the government obtains the full range of civil discovery tools available under the Federal Rules of Civil Procedure. *See Kernan Hosp.*, 2012 WL 5879133, at *5 ("[T]he civil investigative demand is a prefiling investigative tool that Congress created to aid the Government in deciding whether to file suit in the first place."). The government can thoroughly examine all participants' conduct through discovery and ensure that all who should be made defendants in the case are joined. Such an approach avoids depriving CID recipients of important protections available when discovery is conducted under the rules of civil procedure.

The FCA authorizes the government to use CIDs to conduct a false claims law investigation until the government files an action under section 3730(a) or makes an election under 3730(b). The government reached that point here, triggering the bar on further issuance of CIDs, when it elected to *de facto* intervene for purposes of settlement as to several co-defendants and decided to intervene as to SRC. The CID should be set aside for this reason alone.

## II.     The CID is Overbroad and Burdensome

Civil Investigative Demands are investigative tools designed to be used with care and in accordance with the Federal Rules of Civil Procedure. *See* 31 U.S.C. § 3733(j)(6) ("**Applicability of federal rules of civil procedure.**--The Federal Rules of Civil Procedure shall apply to any petition under this subsection, to the extent that such rules are not inconsistent with the provisions of this section"); *see also United States v. Kernan*, 2012 WL 5879133 * 7 (D. Md., November 20, 2012)(noting that "the civil investigative demand provision … [is] intended to encourage *careful* behavior when alleging fraudulent conduct" and "is a tool to be used by "the *responsible* Assistant Attorney General.") [emphasis supplied].

CIDs, like civil non-party subpoenas under Federal Rule of Civil Procedure 45, should avoid overly broad scope or undue burdens on the producing party. In analyzing whether a CID is overbroad or burdensome, a Court may look to the length and scope of the government's prior investigation. *See, e.g. In re Civil Investigative Demand No. 15-429*, 2016 WL 4275853, *8 ("the government's CID must be considered in the context of the lengthy and wide-ranging investigation that has already transpired.") While CIDs issued under the FCA are administrative subpoenas, *Markwood*, 48 F.3d at 975-76, courts have long recognized that administrative subpoenas may be abusive where they have been issued for an improper purpose, including any purpose reflecting on the good faith of the investigation. *See, e.g., U.S. v. Powell*, 379 U.S. 48, 58 (1964) ("It is the

court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."); *Burlington N. R. Co. v. Office of Inspector Gen., R.R. Retirement Bd.*, 983 F.2d 631, 638 (5th Cir. 1993) ("Courts will not enforce an administrative subpoena, however, if the above requirements are not met or if the subpoena was issued for an improper purpose, such as harassment."); *see also Peters v. U.S.*, 853 F.2d 692, 699 (9th Cir. 1988) (summarizing cases).

Here, the DOJ appears to have issued the post-intervention CIDs to retaliate against or pressure non-settling defendants to reconsider their position. Indeed, in addition to the CID at issue in this Petition, the DOJ issued CIDs to individuals associated with other non-settling practices. When considered together with the extensive prior document productions and the extraordinary scope and breadth of the CID's request to Dr. Gupta, the DOJ's issuance of continuing discovery through this CID is improper, harassing, and unduly burdensome.

The scope of the CID here, especially under the DOJ's extremely far-reaching "Definitions and Instructions," would essentially encompass all of the business records of a busy ophthalmology practice over the period of an entire decade. Worse, for Dr. Gupta to comply with the fourteen (14) page "Specifications for the Production of ESI" as written requires the collection of multiple private and business devices, the retention of a forensic ESI company to gather and forensically mirror such devices, the loading and hosting on a review platform (such as Everlaw or the equivalent), and the review by attorneys and legal professionals of tens of thousands of potentially responsive documents. The DOJ's refusal to meaningfully limit the ESI search terms of even to designate which custodians must be searched makes this process even more onerous.

The DOJ has already received documents from Healthx, SRC, and other co-defendants from the initial round of subpoenas before the partial interventions. The prior production by SRC in response to the nearly identical administrative subpoena required it to expend significant sums for vendors alone, and multiples of those sums on attorneys and other legal professionals. Moreover, the DOJ already has all the billing and reimbursement records related to these procedures from CMS and its intermediaries. The CID to Dr. Gupta can only be seen as either retaliation for not settling or an effort to compel him to reconsider that decision. That is not a proper use of a CID, even if the CID was not time-barred.

### III.    A CID in Furtherance of an Unconstitutional Claim Should Be Set-Aside

A CID in furtherance of a cause of action that courts in the Middle District of Florida, where the Healthx FCA Case is pending, have held to be unconstitutional as a violation of the Appointments Clause, should be set-aside. *See Zafirov,* 751 F.Supp.3d 1293*; see also United States ex rel. Gose v. Native American Services Corporation*, 2025 WL 1531137 (M.D. Fla., May 29, 2025)*.

<u>CONCLUSION</u>

The CID should be set aside as untimely and in furtherance of an unconstitutional cause of action and set-aside or modified as duplicative, overbroad, and unduly burdensome.

Dated: December 16, 2025                     Respectfully submitted,

*/s/: Stephen S. Stallings*
Stephen S. Stallings
 Florida Bar No. 958859
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle – 8th Floor
Miami, Florida 33134
Telephone: 305-740-1975
Email: sstallings@leoncosgrove.com
*Counsel to Dr. Shailesh Gupta*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Petition was served via electronic mail service on the False Claims Law Investigator who issued the Civil Investigative Demand at issue in this Petition, Nelson Wagner, Trial Attorney, Department of Justice, on this 15th Day of December, 2025.

*/s/: Stephen S. Stallings*
Stephen S. Stallings
